UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HOMEBANC MORTGAGE<br>CORPORATION, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11079 (KJC)<br>Jointly Administered<br><br>Hearing Date: November 27, 2007 at 3:00 p.m.<br>Objection Deadline: November 20, 2007 at 4:00 p.m. |

## MOTION FOR AN ORDER AUTHORIZING AND APPROVING MODIFICATION OF AUTOMATIC STAY TO PERMIT DIRECT PAYMENT OF LOSS BY THE INSURERS UNDER THE EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY AND SUPPORTING MEMORANDUM OF LAW

### I. INTRODUCTION AND SUMMARY

This Motion For An Order Authorizing And Approving Modification Of Automatic Stay To Permit Direct Payment Of Loss By The Insurers Under The Executive And Organization Liability Insurance Policies And Supporting Memorandum Of Law (the "Motion") is brought by Patrick S. Flood ("Flood"), former Chairman and CEO of HomeBanc Mortgage Corporation ("HomeBanc"), under the applicable Executive and Organization Liability Insurance Policies issued to HomeBanc Corporation and its principal and operating subsidiary, HomeBanc, by the primary insurance carrier, American International South Insurance Company ("AIS"). Flood seeks payment of any "Loss", which includes "Defense Costs", incurred in connection with civil litigation filed by Bradford T. King, *et al.* in the Middle District of Florida and Northern District

---

[1] The last four digits of the taxpayer identification numbers for each of the Debtors follow in parentheses: (i) HomeBanc Mortgage Corporation (2745); (ii) HomeBanc Corp. (3067); (iii) HomeBanc Funding Corp. II (6229); (iv) HMB Acceptance Corp. (6280); (v) HMB Mortgage Partners, LLC (9446); and (vi) HomeBanc Funding Corp. (5742) (together the "Debtors"). Each of these entities has a mailing address of 2002 Summit Boulevard, Suite 100, Atlanta, GA 30319.

of Georgia alleging violations of the Fair Labor Standards Act of 1938 and related proceedings (the "FLSA Litigation").

In light of the bankruptcy of HomeBanc, Flood has not been able to obtain indemnification of such Loss to date in accordance with 8 DEL. CODE § 145 and his agreement with HomeBanc. As a result, if AIS and the excess insurance carriers for the available Executive and Organization Liability Insurance Policies are not permitted to reimburse Flood pursuant to the terms of the policies, Flood will be substantially and irreparably harmed. AIS has declined to pay for any Loss of Flood absent an order from this Court authorizing such payment. Authorizing AIS (and the excess carriers should the primary policy be exhausted) to pay such Loss will not prejudice the bankruptcy estate or its creditors. Accordingly, Flood respectfully asks the Court to grant this Motion forthwith.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. GENERAL OVERVIEW

1. HomeBanc, a Delaware corporation, was a residential mortgage lender headquartered in Atlanta, Georgia, which operated a retail network of stores in Florida, Georgia, North Carolina, and Tennessee.

2. Flood began his employment with HomeBanc's predecessor, Home Federal Savings and Loan, in 1985 as a loan officer.

3. Over the next fifteen years, Flood worked his way up through HomeBanc's ranks, eventually becoming its CEO in May 2000, a position he held until January 12, 2007 when his employment with the Company ended.

## B. THE FLSA LITIGATION

### King, et al. v. HomeBanc Mortgage Corporation and Patrick S. Flood, U.S.D.C., M.D. Fla., Case No. 2:06-cv-96-FtM-34SPC ("King")[2]

4. On February 21, 2006, Plaintiff Bradford T. King, a loan officer then employed at HomeBanc's Naples/ Fort Myers Store, initiated a lawsuit by filing a complaint against HomeBanc and Flood (in his individual capacity), on behalf of himself and unidentified current and former loan officers, alleging that he and the putative class members had been misclassified as overtime-exempt employees under the FLSA.

5. On June 12, 2006, King's lawsuit was consolidated with lawsuits filed by seven other former HomeBanc loan officers independently pending in the Middle District.

6. Since King was filed, in addition to the eight named plaintiffs, 126 former loan officers have filed consent forms putatively opting into the lawsuit.

7. The King Court recently granted Plaintiffs' motion for conditional certification, authorizing notice to be sent to loan officers who worked at HomeBanc's Middle District of Florida Stores (*i.e.*, Jacksonville, Naples/Fort Myers, Orlando, Sarasota, and Tampa) within the past three years. The parties have submitted dueling, proposed notices, which are pending before the Court for its consideration.

8. All of the King plaintiffs and opt-ins are represented by the same counsel: Adams, Cassidy & Piccolo.

---

[2] There was also a case styled Tyler, et al. v. HomeBanc Mortgage Corporation and Patrick S. Flood, U.S.D.C., S.D. Fla., Case No. 0:06-60332-CIV-HURLEY/HOPKINS ("Tyler"), comprising five separate Southern District of Florida lawsuits (Case Nos. 0:06-cv-60332-DTKH, 9:06-cv-80386-JCP, 0:06-cv-60596-JIC, 0:06-cv-60597-WPD, and 0:06-cv-60599-UUB), which the Southern District Court consolidated in that District on June 16, 2006 under the Tyler case style. The parties in Tyler agreed to settle all claims in April 2007. On May 4, 2007, the Tyler Court approved the terms of the parties' proposed settlement in a telephonic hearing and dismissed the consolidated lawsuit with prejudice on May 7, 2007.

**Clements, et al. v. HomeBanc Mortgage Corporation and Patrick S. Flood,**
U.S.D.C., N.D. Ga., Case No. 1:06-cv-02217-ODE

9. On August 8, 2006, Joseph G. Clements, Jr., James David Lee, II, and Allison Morgan Cockrill, former employees in HomeBanc's Atlanta-area Stores, filed a civil complaint on behalf of themselves and other similarly situated employees against HomeBanc and Mr. Flood in Georgia State Court (Cobb County), which HomeBanc and Flood timely removed to the United States District Court for the Northern District of Georgia.

10. Messrs. Clements and Lee alleged they and other similarly situated employees were misclassified as exempt employees under the FLSA and are therefore entitled to unpaid overtime. Messrs. Clements and Lee also claimed they were owed unpaid wages under Georgia State law.

11. Ms. Cockrill, a non-exempt, hourly administrative employee, alleged she and other similarly situated employees were required to work off-the-clock and were not paid time-and-a-half for hours worked over forty in a workweek in violation of the FLSA.

12. On February 26, 2007, plaintiffs moved to amend the complaint and to add the following former HomeBanc employees as plaintiffs: Brian Bhalla, Jennifer Byrd, William B. Kirk, Craig Lebhaft, John D. Litras, Adam D. Rodes, William T. Shirley and Steve Thompson. In their memorandum of law in support of their motion to add additional plaintiffs, plaintiffs expressly acknowledged that they were "[o]mitting the collective action allegations" and would be pursuing the action only on behalf of the named plaintiffs.

13. HomeBanc and Flood moved to sever the Clements plaintiffs' claims, for purposes of discovery and summary judgment, into three cases: (a) Messrs. Bhalla, Clements, Kirk, Lebhaft, Lee, Litras, and Thompson (all exempt loan officers); (b) Ms. Byrd and Mr.

Shirley (who were non-exempt employees); and (c) Ms. Cockrill and Mr. Rodes (who held both exempt and non-exempt positions at HomeBanc).

14. The Court granted HomeBanc's and Flood's motion on August 10, 2007, severing Clements (which it subsequently administratively closed) into three separate lawsuits: (a) Byrd, et al. v. HomeBanc Mortgage Corporation and Patrick S. Flood, U.S.D.C., N.D. Ga., Civil Action File No. 1:07-cv-01893-ODE ("Byrd"); (b) Bhalla, et al. v. HomeBanc Mortgage Corporation and Patrick S. Flood, U.S.D.C., N.D. Ga., Civil Action File No. 1:07-cv-01894-ODE ("Bhalla"); and (c) Cockrill, et al. v. HomeBanc Mortgage Corporation and Patrick S. Flood, U.S.D.C., N.D. Ga., Civil Action File No. 1:07-cv-01895-ODE ("Cockrill").

15. The plaintiffs in Byrd, Bhalla, and Cockrill are together represented by The Barnes Law Group, LLC and The Office of Barney Glen Johnson.

**Davis v. HomeBanc Mortgage Corporation and Patrick S. Flood, U.S.D.C., M.D. Fla., Case. No. 6:06-cv-01668-Orl-28JGG ("Davis")**
**Gilhuly v. HomeBanc Mortgage Corporation and Patrick S. Flood, U.S.D.C., M.D. Fla., Case. No. 6:06-cv-01669-Orl-28JGG ("Gilhuly")**
**Gil v. HomeBanc Mortgage Corporation and Patrick S. Flood, U.S.D.C., M.D.Fla. (ORLANDO), 6:06-cv-01742-PCF-UAM ("Gil")**
**White v. HomeBanc Mortgage Corporation and Patrick S. Flood, U.S.D.C., M.D. Fla., Case. No. 6:07-cv-00169-Orl-22UAM ("White")**

16. Kimberly Gilhuly, a non-exempt, hourly Customer Service Specialist who worked at HomeBanc's Orlando Store (among others), filed an individual civil complaint against HomeBanc and Flood on October 25, 2006 in the United States District Court for the Middle District of Florida, alleging she was required to work off-the-clock and was not paid time-and-a-half for hours worked over forty in a workweek in violation of the FLSA.

17. Since the filing of the Gilhuly complaint, three other former non-exempt Customer Service Specialists from the Orlando Store (Brent A. Davis, Karla M. Gil, and Tasha White) filed similar individual FLSA lawsuits against HomeBanc and Flood in the Middle

5

District (Case Nos. 6:06-cv-01668-JA-UAM, 6:06-cv-01742-PCF-UAM, and 6:07-cv-00169-ACC-UAM (respectively)).

18. All of the plaintiffs are represented by the same counsel who represent the plaintiffs and opt-ins in King as well: Adams, Cassidy & Piccolo.

### C. HOMEBANC'S BANKRUPTCY

19. On August 9, 2007, HomeBanc and related entities filed voluntary petitions under Chapter 11 of Title 11 of the United States Code, commencing a bankruptcy case being jointly administered under the style In re HomeBanc Mortgage Corporation, *et al.*, Case No. 07-11079-KJC, in this Court.

20. On August 15, 2007, HomeBanc filed its Notices of Commencement of Bankruptcy in King, Byrd, Bhalla, Cockrill, Davis, Gilhuly, Gil, and White, notifying the courts of the pending bankruptcy proceedings.

21. In accordance with 11 U.S.C. § 362(a)(1), the cases have been automatically stayed by Homebanc's bankruptcy petitions as to HomeBanc in King, Byrd, Bhalla, Cockrill, Davis, Gilhuly, Gil, and White.

22. On August 28, 2007, the courts in Byrd, Bhalla, and Cockrill dismissed the cases without prejudice, staying them (including as to Flood) pending the bankruptcy proceedings, administratively closing the case files, and allowing the parties the opportunity to try to reopen by motion.

23. On September 24, 2007, the court in White agreed to stay all proceedings, including as to Flood, because of HomeBanc's bankruptcy, administratively closing the case. The courts in Davis and Gilhuly did the same on October 1, 2007, and the Gil court followed suit on October 14, 2007.

24. At present, <u>King</u> continues to proceed against Flood with discovery and procedural deadlines looming — although Flood is currently seeking to stay that case as well, which the plaintiffs oppose.

25. Flood has made claims for payment of Loss associated with the FLSA litigation in accordance with the terms and conditions of the Executive and Organization Liability Insurance Policy (No. 492-69-65) issued by AIS (the "Insurance Policy").

26. AIS has advised Flood that once this Court provides an order allowing the proceeds of the policy to be distributed to Flood, it will pay his Loss (including Defense Costs already incurred but not yet paid) in connection with the FLSA Litigation, subject to the terms of the Insurance Policy and AIS's reservation of rights.

27. Defense Costs have been and continue to be incurred, and invoices have already been submitted to AIS for payment subject to approval by this Court.

### III. JURISDICTION, VENUE AND RELIEF

28. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (G) and (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§ 105(a) and 362(d) of the Bankruptcy Code.

### IV. THE EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

29. HomeBanc Corporation purchased the "claims-made" Insurance Policy from AIS, which policy also covers HomeBanc. The policy period of the Insurance Policy is July 13, 2005 to July 13, 2006.

30. Subject to its terms and conditions, the Insurance Policy provides coverage for any defined Loss. The Insurance Policy states:

With respect to Coverage A, B and C, solely with respect to Claims first made against an Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy affords the following coverage:

COVERAGE A: EXECUTIVE LIABILITY INSURANCE

This policy shall pay the Loss of any Insured Person arising from a Claim made against such Insured Person for any Wrongful Act of such Insured Person, except when and to the extent that an Organization has indemnified such Insured Person ….

COVERAGE B: ORGANIZATION INSURANCE

(i) Organization Liability. This policy shall pay the Loss of any Organization arising from a Securities Claim made against such Organization for any Wrongful Act of such Organization.

(ii) Indemnification of an Insured Person. This policy shall pay the Loss of an Organization arising from a Claim made against an Insured Person (including an Outside Entity Executive) for any Wrongful Act of such Insured Person, but only to the extent that such Organization has indemnified such Insured Person.[3]

31. The term "Loss" is defined by the Insurance Policy, as amended by Endorsement # 2, to mean: "damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), Defense Costs and Crisis Loss; however, 'Loss' (other than Defense Costs) shall not include (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) any amounts for which an Insured is not financially liable or which are without legal recourse to an Insured; and (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed."[4] The term "Defense Costs" is defined by the Insurance Policy to mean "reasonable and necessary

---

[3] Insurance Policy § 1. Coverage C deals with Outside Entity Executive Liability Insurance, which is inapplicable here.

[4] Insurance Policy § 2(p), Endorsement # 2.

fees, costs and expenses consented to by the Insurer ... resulting solely from the investigation, adjustment, defense and/or appeal of a Claim against an Insured ...."[5]

    32. The Insurance Policy additionally provides:

> In the event that a determination as to the amount of Defense Costs to be advanced under the policy cannot be agreed to, then the Insurer shall advance Defense Costs excess of any applicable retention amount which the Insurer states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.[6]

    33. As evidenced by the plain language of the Insurance Policy, subject to certain conditions and other terms, Flood is entitled to payment of, among other things, attorneys' fees and related costs as a covered Executive under the Insurance Policy.[7]

    34. The Insurance Policy expressly provides that payment under the policy must first be made to an Executive or Employee of the Company or an Outside Entity Executive before any payment is made to the Company.[8]

    35. Section 19 of the Insurance Policy further provides that, in case of the bankruptcy or insolvency of the Company, the Insurers shall not be relieved of any of their obligations.

> Bankruptcy or insolvency of any Organization[9] or any Insured Person[10] shall not relieve the Insurer of any of its obligations hereunder.[11]

---

[5] Insurance Policy § 2(f).

[6] Insurance Policy § 8.

[7] "Executive" means "any: (1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position); (2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a Foreign Jurisdiction that is equivalent to an executive position listed in Definition (j)(1); or (3) past, present and future General Counsel and Risk Manager (or equivalent position) of the Named Entity." Insurance Policy § 2(j).

[8] See Insurance Policy § 22.

[9] "Organization" means "(1) the Named Entity [HomeBanc Corporation]; (2) each Subsidiary [defined to include HomeBanc Mortgage Corporation]; and (3) in the event a bankruptcy

9

## V. REQUESTED RELIEF AND REASONS THEREFOR

36. The proceeds of the Insurance Policy do not constitute property of the Debtors' estates under Bankruptcy Code Section 541. If the Court finds otherwise, then Flood seeks entry of an order granting relief from the automatic stay under Bankruptcy Code Section 362(d) for purposes of allowing AIS to pay for any Loss, including advancing Defense Costs, to Flood.

37. Although the policy may technically be "property of the estate,"[12] courts have distinguished between ownership of the policy itself and ownership of the proceeds (i.e., the payments made by the insurer pursuant to the insurance contract).[13]

38. Courts have determined that proceeds of a policy, like the one under consideration, are **not** property of the estate[14] because: (a) the policy benefits only the executives and officers, either by providing direct coverage for claims made against them, or indirect

---

proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any." Insurance Policy § 2(t).

[10] "Insured Person" means "any: (1) Executive of an Organization [defined to include Flood]; (2) Employee of an Organization [defined to include Flood]; or (3) Outside Entity Executive." Insurance Policy § 2(o).

[11] Insurance Policy § 19.

[12] In re Johns-Manville Corp., 40 B.R. 219, 230-31 (Bankr. S.D.N.Y. 1984).

[13] See In re Continental Airlines, 203 F.3d 203, 216 (3d Cir. 2000) (the "proceeds from [an] insurance policy should be evaluated separately from the debtor's interest in the policy itself"); Ochs v. Lipson (In re First Cent. Fin. Corp.), 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("While a majority of courts consider a D&O policy estate property . . . there is an increasing view that a distinction should be drawn when considering treatment of proceeds arising under such policies.") (internal citations omitted).

[14] See, e.g., La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.), 832 F.2d 1391, 1400-01 (5th Cir. 1987); In re Allied Digital Techs. Corp., 306 B.R. 505, 512-13 (Bankr. D. Del. 2004); In re Medex Reg'l Labs., LLC, 314 B.R. 716, 721-23 (Bankr. E.D. Tenn. 2004); Maxwell v. Megliola (In re marchFIRST, Inc.), 288 B.R. 526, 530 (Bankr. N.D. Ill. 2002), aff'd on other grounds, 293 B.R. 443 (N.D. Ill. 2003); In re Youngstown Osteopathic Hosp. Ass'n, 271 B.R. 544, 550-51 (Bankr. N.D. Ohio 2002); In re CHS Elecs., Inc., 261 B.R. 538, 541-42 (Bankr. S.D. Fla. 2001); In re First Cent. Fin. Corp., 238 B.R. at 17-18; In re Daisy Sys. Sec. Litig., 132 B.R. 752, 755 (N.D. Cal. 1991).

coverage for those claims by reimbursing the corporation for its indemnification of the executives and officers;[15] and/or (b) the Debtors' interest in the policy is merely "hypothetical" or "speculative" where there are no claims against the Debtors that would implicate the policy's Entity Coverage.[16]

39. Here, Flood seeks authorization for AIS to pay any Loss associated with the FLSA Litigation. The Insurance Policy therefore benefits only Executives and Officers. First, Executives and Officers (*i.e.*, Flood) are directly benefited by Coverage A, which provides for Executive Liability Insurance. Second, Executives and Officers are also benefited by Coverage B, paragraph (ii), which provides for the payment of Loss of the Debtors if the Debtors indemnify a director or officer.

40. Moreover, the Debtors' interest in the proceeds of the Insurance Policy is merely "hypothetical" or "speculative" because direct coverage for the Debtors is only provided for a defined Securities Claim made against the Organization,[17] and the FLSA Litigation does not

---

[15] See, e.g., Imperial Corp. of America v. Milberg, Weiss, Bershad, Spechtrie & Lerach (In re Imperial Corp. of America), 144 B.R. 115, 118-19 (Bankr. S.D. Cal. 1992).

[16] See, e.g., In re First Cent. Fin. Corp., 238 B.R. at 17-18.

[17] "Securities Claim" means "a Claim, other than an administrative or regulatory proceeding against, or investigation of an Organization, made against any Insured:
  (1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:
    (a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an Organization; or
    (b) brought by a security holder of an Organization with respect to such security holder's interest in securities of such Organization; or
  (2) brought derivatively on the behalf of an Organization by a security holder of such Organization.

involve any such allegations. Further, on inquiry of the Debtors, Flood was informed that Debtors are unaware of any Securities Claims made against the Insured during the Policy Period of the Insurance Policy. In addition, neither Flood nor AIS have any record of any Securities Claims being reported during the Policy Period of the Insurance Policy. Thus, any claim by the Debtors on the proceeds of the Insurance Policy would depend on a "speculative" or "hypothetical" Securities Claim. Therefore, both elements identified by courts in determining that proceeds of executive and organization liability insurance policies are not within the debtor's estate are present here.

41. If this Court concludes, however, that the Insurance Policy proceeds are nevertheless property of the Debtors' estate, "cause" exists under Bankruptcy Code Section 362(d) for relief from the stay to permit AIS to pay any Loss, including Defense Costs, incurred by Flood.

42. Section 362(d)(1) of the Bankruptcy Code provides that the court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]"[18] The determination of whether cause exists to grant relief from the stay is committed to the sound discretion of the bankruptcy court.[19]

---

Notwithstanding the foregoing, the term 'Securities Claim' shall include an administrative or regulatory proceeding against an Organization, but only if and only during the time that such proceeding is also commenced and continuously maintained against an Insured Person." Insurance Policy § 2(y).

[18] 11 U.S.C. § 362(d)(1).

[19] In re Sonnax Industries, Inc., 907 F.2d 1280, 1286 (2d Cir. 1990). In determining whether cause exists for granting relief from the automatic stay, the Court should balance the competing interests of the relevant parties. In re Colin Hochstin Co., 41 B.R. 322, 325 (Bankr. S.D.N.Y. 1984); accord In Re Adelphia Commc'ns Corp., 285 B.R. 580, 594 (Bankr. S.D.N.Y. 2002), vacated and remanded on other grounds, In re Adelphia Commc'ns Corp., 298 B.R. 49, 53-54 (S.D.N.Y. 2003) (considering multiple factors, including the impact of the stay on the parties and the balance of harms).

43. Numerous courts have granted relief from the automatic stay to allow for the payment from an insurance policy of loss on behalf of executives and officers.[20] For example, in Cybermedia, the debtor maintained an insurance policy that provided coverage to directors and officers of Cybermedia and provided coverage directly to Cybermedia itself.[21] The trustee of Cybermedia filed a complaint against two former directors of Cybermedia based on certain fraudulent transfers and other claims.[22] The former directors sought payment of defense costs from the policy.[23] The trustee responded that the former directors did not have a right to payment of defense costs because such payment would deplete the funds available to the debtor under the policy.[24] The court concluded, however, that:

> [t]here is cause to lift the automatic stay because [the former directors] may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments. [The former directors] are in need **now** of their contractual right to payment of defense costs and may be harmed if disbursements are not presently made to fund their defense of the Trustee's Complaint.[25]

---

[20] See In re Adelphia Commc'ns Corp., 285 B.R. at 598 (granting relief from stay in order to permit primary insurer to advance defense costs); see also Executive Risk Indem., Inc. v. Boston Reg'l Med. Ctr., Inc. (In re Boston Reg'l Med. Ctr., Inc.), 285 B.R. 87, 98 (Bankr. D. Mass. 2002) (granting relief from stay in order to permit use of D&O policy proceeds for payment of defense costs); In re Enron Corp., No. 01-16034, 2002 Bankr. LEXIS 544, at *3-*4 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay, to the extent applicable, for payment of defense costs); In re CyberMedica, Inc., 280 B.R. at 18-19 (granting relief from stay for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under D&O policy).

[21] In re Cybermedia, 280 B.R. 12, 14 (Bankr. D. Mass. 2002).

[22] Id. at 14.

[23] Id.

[24] Id. at 14-15.

[25] Id. at 18.

44. Cause exists for granting relief from the stay to permit AIS to pay any Loss of Flood as he is in need of insurance proceeds now to pay for attorneys' fees and costs, including those already incurred but not yet paid, as well as any future Loss, to defend himself adequately.

45. Accordingly, to the extent the proceeds under the Insurance Policy are considered property of the bankruptcy estate, cause exists under Bankruptcy Code section 362(d) to warrant relief from the stay to permit AIS to pay any Loss on behalf of Flood.

## VI. NOTICE

46. Flood has provided notice of this Motion to: (a) the Office of the United States Trustee; (b) the Creditors listed in the Petition; (c) counsel for the Committee; (d) AIS; and (e) all parties who have made a formal request for service in this Chapter 11 case. In light of the nature of the relief requested, Flood submits that no further notice need be given prior to the entry of an order.

47. No previous request for the relief sought herein has been made by Flood to this Court or any other court.

## VII. CONCLUSION

WHEREFORE, Patrick S. Flood respectfully requests that this Court authorize and approve AIS and the excess insurance carriers to make direct payment of any Loss, including Defense Costs, on behalf of Flood under the applicable Executive and Organization Liability Insurance Policies.

November 6, 2007.

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: /s/ Michael G. Busenkell
Michael G. Busenkell (Bar No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, DE 19801
Tel.: (302) 425-0430
Fax: (302) 425-0432
E-mail: mbusenkell@eckertseamans.com

Ryan Scott Ferber* (Ga. Bar No. 142082)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Tel: (404) 572-3529
Fax: (404) 572-5135
E-mail: sferber@kslaw.com
(*Pro Hac Vice Admission Motion Forthcoming)

ATTORNEYS FOR PATRICK S. FLOOD